Good morning, your honor, Chief Judge Smith. This is Adrian Rowe and I'm pleased to be here this morning with Harrison Graydon, who's a third-year law student at Duquesne Law School. I'm joined by you two, by the co-instructor in the class, Sam Simon, and I understand the court has granted leave to Mr. Graydon to present oral arguments. Thank you. Thank you very much, Mr. Rowe. Thank the clinics for taking off the responsibilities that go with serving as amicus. May it please the court, your honors, we would like to reserve two minutes for rebuttal. A proper application of Panetti v. Quarterman should afford the defendant relief in this case. Most circuits that have addressed this issue have misapplied Panetti by construing its holding far too narrowly and holding rather than creating a new rule of construction that instead Panetti should indeed be applied in such a way so ADPA will not be construed to violate due process. The 11th circuit panel in Scott v. United States correctly analyzed Panetti's holding and stated that Panetti's reasoning applies with full force to certain Brady claims under ADPA. Nonetheless, how does Scott help you? You rely heavily on it, I know, but it's only language in Scott on a holding that you utilize, correct? Yes, your honor. The reason that Scott v. United States does help us is that in Scott, the 11th circuit was merely bound by prior panel rule, which meant that the 11th circuit was bound to apply the prior holding in that circuit in Tompkins v. Department Secretary of Corrections. Yes, and in fact, the 11th circuit, notwithstanding the invitation of the Scott panel to revisit their early decision, chose not to do so, right? Yes, your honor, and while that is true, it's not necessarily a statement on the merits of whether the analysis in Scott was worthwhile. If the Scott court had been approaching this as a first-in-time, first-impression issue, the Scott court would have likely applied the holding that it opined on in its analysis, but nonetheless, it couldn't, and the full court had an opportunity through the device of unbound review to correct, if you will, what had previously been held by the 11th circuit, and obviously, we can conclude that at least a majority, we don't, I don't happen to know the exact vote, but at least the majority decided that they were not going to do so. Yes, your honor. Again, there's no precedent in Scott for you to rely upon. You can see that, right? No, we necessarily are arguing that the reason why Pinedi versus Quarterman, which is binding on this court, the reason is, is that Pinedi can indeed be read to assist the types of claims that are involved in this case, a second-in-time 2255, alleging a Brady violation that was not yet known at the time of the first petition, and so... Help me with this, if you will, please. The Scott opinion, if I recall correctly, refers to actionable What does it take for a Brady claim to be actionable? For a Brady claim to be actionable, the evidence that was withheld from the defendant would have to have a reasonable probability of a different result, and so the issue with AEDPA is that under the second and successive petition bar, these types of claims are now subject to a clear and convincing evidence standard, which many courts have noted that is a much higher burden of proof than as is normal in a typical Brady case, and in fact, in a dissenting from a denial of cert by Justice Sotomayor, she noted last term that this is indeed an illogical rule because Pinedi should dictate that petitioners who have not had a full and fair opportunity to be heard because they had no reason to know of the facts of the claim... That is indeed what she said, what she argued, but once again, here you're referring to an opinion that was written as a dissent. It's not precedential authority as we cannot view the language in Scott that you rely upon, so what can we look to beyond words of a dissenting justice and words of a majority? In fact, I think the opinion that may have been an opinion in which the language of all three of those judges agreed, but they were disagreeing from the earlier holding. I mean, what authority do you have that you can grasp onto and that we can look to? The authority that controls this case is Pinedi v. Quarterman. The reason is, Your Honor, that in Pinedi v. Quarterman, the Supreme Court was addressing exceptions to 2255 second or successive claims, and in Pinedi, although the facts in that case related to forward claims, the analysis in that case can be applied with equal vigor to a rate. That's pretty much a stretch, right? Because there's two parts of the analysis that I think can extend. The first part is that second in time is not necessarily second or successive. That's going to apply pretty broadly, but the second part is unique to incapacity. To the extent that Pinedi opens the door for some second in time petitions are not second or successive, that's good for you, but beyond that, what help does Pinedi give you? Because the rest of it's about incapacity and after-the-fact incapacity. After-the-fact incapacity, as was the issue in Pinedi, can be analogized to an after-the-fact discovery of a Brady claim, and so the reason is... But doesn't AEDPA already account for newly discovered evidence in situations like that? Aren't you asking us to read newly discovered... I mean, if we construe this second in time claim to be second or successive, that doesn't result in some colossal injustice if newly discovered evidence can still be a basis for a habeas petition, does it? So I would bring to this court's attention a Tenth Circuit decision known as In re Picard from 2012. Before you do that, unless that case directly answers Judge Phipps' question, I think it'd be best to answer his Okay, so the reason why this can be helpful for us is you have to consider, as with a Ford claim, Ford claims, as the Pinedi court said, cannot be brought when a petitioner is not yet mentally incompetent, and so it wouldn't make sense to bar those claims or to prevent the petitioner from being heard on those claims when the factual predicate for his mental incompetency did not exist. And so likewise, it's easy to see a situation where someone is convicted, they exhaust their direct appeals, they file a first unrelated habeas petition for, say, ineffective assistance of counsel, and then they try to bring a second petition because many years later they may discover that exculpatory evidence was withheld from them. The issue is that the evidence that is deemed to be newly discovered evidence under AEDPA is subject to a much higher standard of proof. And the reason why I wanted to bring up the Tenth Circuit decision was, in that case, although the Tenth Circuit barred that petitioner's claim as second or successive because of a second-in-time Brady claim, the court did indeed acknowledge that in those types of cases the petitioner has indeed suffered a constitutional violation. But nonetheless, because it is not clear and convincing, instead of a reasonable probability of a different result, that petitioner is nonetheless barred even when a court can acknowledge a constitutional violation has taken place. And in Panetti, the court essentially opined that when construing AEDPA, it should not be construed in such a manner to create anomalous, unfair, or unjust results. But that goes to the thrust of my question. Because my question asked, because AEDPA has a provision for newly discovered evidence, how is reading a subsequent Brady claim as second-in-time Brady claim as reading it second or successive unfair or inequitable in the same way that a Ford claim was? Because the Brady claim can be based on newly discovered evidence for the conviction itself, not after conviction effects of that conviction as can be manifest in a Ford case. The reason why, you know, you note the statutory exception for newly discovered evidence. The issue with a Brady claim is that it goes directly to due process under the Fifth Amendment. And the reason for that is that to deny a petitioner who has been denied their rights have indeed been violated pursuant to the Constitution. Well, that is, I'll agree with you, that is a substantive difference in the sense that it describes the constitutional dimensions here. But I don't think it's responsive to what I understand to be the remedial thrust of Judge Phipps' question. That is that there is a remedy for newly discovered evidence already. So why, what is it that requires us to go the path you're suggesting, even though there is this constitutional proportion to the Brady claim? How is it so unfair? How is it so unjust to adhere to the regime that already exists and the remedy that is provided for? It acknowledges the current regime that is provided, acknowledges that someone's rights are violated, but then they are without remedy. And so that is the fundamental issue in this case is going straight to due process and the remedies. But just let me, I'm going to say this. There's any number of times where there's due process concerns in the law and statutes account for those. We have like long arm statutes that reach people. We have personal jurisdiction doctrines that are based on notions of substantial justice and fair play and words like this. And then those due process concerns are accounted for through statutory enactment. And then we look at the statute and say, yeah, that actually meets your due process concerns. And so my question is, doesn't this statute meet all of those due process concerns? And what precisely is it then about this statute that falls short of the minimum guarantees of due process? The answer that I would give is that as I was stating earlier with Brady versus Maryland, the violation there is the withholding of the evidence, which creates a deprivation of a fair trial because the defendant should be entitled to any exculpatory evidence that's provided to him. The issue is under EDPA, merely because it's a second or successive claim, the threshold now becomes so much higher where we are acknowledging as some courts have that the petitioner's rights were violated, yet at the same time saying that, well, we just have to rigidly adhere to this statute. We cannot permit this person to recover any type of remedy for the violation of their rights because of the fact that the statute prevents them from doing so. And so let's give Judge Roth an opportunity to get in here. She has a question at this juncture. Well, you know, I am someone who is very strongly persuaded by facts, and I have trouble considering this newly discovered evidence at all because of the fact that this is about an agreement between the defendant and the victim on how with an insurance policy and other considerations, the victim was going to pay to Mr. Boulders the money that was doing. And so this had to be an agreement between the victim and Mr. Boulders about the transaction that is said to have led to Mr. Boulders killing the victim. But Mr. Boulders knew about it from its inception. And so how can you say that if this is an agreement between him and the victim, that he didn't know about it until this evidence was discovered 10 years later and then looked at him by him many, many years after that? So Judge Roth, with regards to whether the evidence was newly discovered, the issue there is that under Brady, the government had custody of this information. But Boulders knew about it. In fact, it was seized from Mr. Boulders' business, wasn't it? Yes, it was seized from his business, but he did not have access to it, and it was not provided a trial. Has he ever brought it up before? I find nothing to show he ever brought it up before, which makes me think that maybe something's a little phony about it all. The issue with the phoniness of this evidence would thus, we're here today to talk about whether 2255 as a whole has a new exception for second-in-time Brady claims. So necessarily in this instant case, we cannot necessarily say what the provenance of Mr. Boulders' evidence is, but that in cases much like Mr. Boulders, there are definitely situations where a petitioner is not able to have access to information or evidence that would be exculpatory for him or her at trial, and then is therefore later given it after they've already filed a habeas petition and are not able to get a second opinion. But doesn't the thrust of Judge Roth's question go to something that you've assumed, which is, is this even a case for a Brady violation? I mean, I've heard Brady described in many different ways. I hear it described as Brady information, sometimes Brady materials, sometimes Brady documents. And so Brady is usually followed by, as Judge Smith said in our earlier argument, a number of nouns. And at least if Brady is only referring to Brady information, then isn't Judge Roth's point grounded in the facts that Mr. Balter had the information at the time of trial? And so don't you have to at least begin to argue that Brady, to be a violation, has to be one, documents only, and documents in the possession of his attorney at the time of trial. And so you act like the only issue is whether it can be second or successive. But built into that is, do you even have something that gets off the ground as far as Brady? What do you say? So in this instant case, the facts are certainly difficult. Nonetheless, a holding in Panetti, the issue we're trying to address today is about second and successive petitions. It is about whether courts are construing properly. And to get to that, a district court in the first instance would better be able to address the facts or merits of the claim that's before them. And so if a petitioner brings something that is not a merited claim under Brady, that claim will nonetheless be barred. But instead, in a situation where a petitioner is bringing a claim, where they had no ability to have access to this information until after their first habeas petition, we strike at a fundamentally unfair aspect of this person being deprived of this evidence. But aren't you then putting a significant burden on the courts to say that any claim of Brady has to go through whether it's will no longer be considered a second and successive petition, but will go through and consider it on the merits? Isn't it easier to approach the question at an earlier stage and say, from the record, we could see this couldn't be Brady in the first place? So with the burden on the courts with this issue, under the current regime of Brady and Edpub, the way that things often work, and this is similar to the Ford claims argument, as the Panetti court suggested when analyzing a Ford claim, the burden on the courts would actually be greater if instead we continue to require these petitions to be brought with or without merit. Otherwise, a petitioner will risk losing his or her rights to bring that claim at a later time. And so in Panetti, the court determined that for certain class of petitioners who are filing Ford claims, they would nonetheless have to bring the Ford claim, whether or not they had any good faith basis to believe they would become mentally incompetent at a later date. And so with Brady claims, if instead we say you only get one chance at bringing a Brady claim, unless you can bring one to a much higher magnitude as a second or successive petition, instead we're going to have people raising these claims as an empty formality so that they're not hit by 2255H1's second and successive bar. So I think Panetti helps to guide this court on how the issue of judicial economy by permitting these claims to be addressed. All right, Mr. Graydon. Let me ask Judge Phipps if he has any additional questions. No, I do not. At this stage, we again are certainly not even trying to adhere to the clock, but we will have you back on rebuttal. Thank you. Thank you. Mr. Sanders. Good morning. May it please the court, I'm Stephen G. Sanders on behalf of the United States, the appellee in 19-1667. Can you keep your voice up, please? Yeah. Yes. Can we get more volume or get closer to the microphone, Mr. Sanders? I'll get right on top of it. I represent the appellee, the United States in 19-1667 and the respondent in 19-1489. We've spent no time talking about jurisdiction this morning, so if your honors would like, I will go straight to the Brady issue. You know what? I've got questions about jurisdiction. Let me just start with this. There's this case, Robinson v. Johnson, that you cite in your brief and it says this. I'll read it just to familiarize. You may know it off the cuff, but let me just read what I'm interested in. This line says, quote, when a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. 1631, unquote. It's that or that's really interesting to me. Again, I don't want to get into a big and or debate, but it seems like this is meaningful because Robinson v. Johnson says you can do one or the other. You can dismiss or you can transfer. In this case, however, the district court basically did both. It said we're dismissing without prejudice and we're transferring. And so that's led to a lot of the jurisdictional conundrums that we have. Is our jurisdiction predicated on the transfer motion or is it predicated on the dismissal? And so it seems like why don't I mean, is there any value in just a limited remand to say to the district court, our guidance says pick one, you pick both. Can you just tell us if you meant this to be a transfer or a dismissal? Because if it's a transfer, as your brief points out, that's that's tough as as appellate review. But if it's a dismissal, then that's not so tough for appellate review. And so we get to this point where doing both wasn't on the table, at least by our case law, and doing both is what the district court did. So do you see any value in terms of just clearing all of this up by a limited remand to basically say to the district court, we gave you an either or and you pick both. Sometimes that's good. Sometimes a district court doing a belt and suspenders is viewed as a good thing. And I understand that urge very much. But in this case, with all the jurisdictional ramifications that fall from that and the differing jurisdictional ramifications, what's your position on clearing that up? Well, your honors, in any other case, I would say that would be a good idea. Unfortunately, in this case, the district judge passed away. So we can't send it back to ask him what he intended. But I can I can offer this bit and it's a little bit of speculation. But I think when we filed this motion and for electronic electronic filing purposes, we docketed as a motion to dismiss. And I don't know if there was an option to select or transfer. So it may have been the judge, Chief Judge Samando at the time wanted to have a way to close this out on the docket, to administratively close the case, to resolve the motion. But his real intent was to transfer it to this court. And as I pointed out in my most recent letter, and as the court knows that the transferred action got to the Third Circuit, right, it would have if a clerk or someone had noticed this early on earlier on, they would have noticed it's it's impossible to both dismiss the case and transfer it. But it transferred it was. So it did arrive at the Third Circuit. And this if you continue to treat it as a transfer order, then we rely on the arguments in our brief that those are not appealable either as a final order or under the collateral order doctrine. If we treat it as a dismissal, however, then the second case we would have appellate jurisdiction over. Is that correct? That's correct. And as I've argued again in my most recent letter, I think it would then be a final order in a habeas case under 2253A and then 2253C would kick in and a certificate of appealability would be required to provide this court with jurisdiction over the questions that are in play. Yeah. Proceed, Mr. Sander. Okay, let me then turn to... And please keep your voice up. I'm having a lot of trouble hearing you. I will. I'll do my best. I did an audio test before. I would respond to my adversary's points about the about Kennedy by pointing out this. He is trying to conflate newly ripe claims, right? With claims that the factual basis are known after the first 225 is concluded. Let me make this clear. In Panetti, the claim wasn't just right because the defendant or the prisoner wasn't mentally ill at the time of his first petition, but because there was no execution imminent, right? The right that was going to be violated, the eighth amendment right, that claim would not accrue until there was an execution imminent. In the Brady context, right? The Brady claim accrues, if at all, when evidence is suppressed at the time of trial and that evidence is material. That claim is ripe and it's complete the moment there's a verdict. The only difference is that the defendant doesn't know about it until that allegedly suppressed evidence is revealed later. But as Judge Phipps was pointing out, EDPA specifically includes a category of cases that it labels a second or successive based on newly discovered evidence. In other words, and that presupposes there's a ninth circuit, as Judge Callahan said in Brown versus Muniz, right? That presupposes that there were facts that existed that the defendant didn't know about earlier, but now has learned about them. And EDPA says for those facts, if they are to support a claim, they must satisfy this clear and convincing standard that is written into 2255 H1. Now, how do we know that? It's not just Panetti and Justice Kennedy's language in the majority there, but in the later decision in Magwood, Justice Thomas, and it's not part of the holding, but explaining why he was rejecting the state's position that its rule, that one full and fair opportunity would be the correct test. He wrote that that rule would basically allow for claims based on newly discovered evidence, i.e. like Brady claims, but without satisfying that clear and convincing test. And he said, we declined to adopt a reading that would truncate section 2254 B2's requirements. So the majority in Magwood was already thinking about this very sort of thing when they issued their ruling. And that's at pages 335 and 336 of 561 U.S. So let me turn also to the, I mentioned Brown, right? Judge Callahan's opinion for the court there relied heavily on, and I didn't cite this in my brief, but it is a case cited in Brown itself, when Restro is an earlier Ninth Circuit case. And that's a case in which the defendant discovered long after he had, or after he concluded his first 2255, that his lawyer had received a favorable plea offer from the government, but had not related to him, right? So he now wants to bring an ineffectiveness claim, a newly available ineffectiveness claim, right? And the Ninth Circuit case, which is a case in which the defendant learns about the evidence supporting the claim after the fact. And the fact is that 2255 H1, right, means the trial, right? The claim existed. The ineffectiveness occurred at the time of trial, at the time of the guilty plea, not when the defendant learns about the evidence supporting the claim after the fact. So let me stop you there, Mr. Sanders, just for the benefit of, for my benefit, understanding that ripeness then really looks more to the time of actual violation than to the knowledge of the defendant that there was a violation, or more to the point that this material exists. Is that, is that a correct distinction? That's correct, Your Honor. And if I can just pull that, pull through on that thread, and if you, if you bear with me, I just want to read what the Ninth Circuit and Bland-Rostro wrote. They said that the defendant asked us to broaden the rule announced in Martinez, Villarreal, and Panetti, so that it permits claims that were ripe at the conclusion of the first 2255 proceeding, but were not discovered until afterwards. And this is how they responded to that. But we think that the words of 2255H indicate Congress's clear intent to prohibit us from certifying second-in-time claims ripe at the time of the prisoner's first 225 proceeding, but not discovered until afterwards, unless such claims either rely on new retroactive rule of constitutional law or clearly and convincingly prove the prisoner's innocence. And that earlier ruling in the context of a ineffectiveness claim was what the court, what the Ninth Circuit and Brown v. Muniz later relied on to hold that Brady claims fall precisely within that first category in 2255H. And that shows that's what Congress intended. They intended to impose a higher burden of proof on the prisoner to obtain collateral relief, and that was part of AEDPA's overall goal of channeling most claims into the first 2255 and creating two narrow exceptions for claims just brought in a successive petition that challenged the original judgment. Judge Roth, you asked questions about whether this is newly discovered evidence, and we contend that it's not. But that, of course, that question presupposes that this claim is subject to 2255H1 to begin with. But as you pointed out, the evidence in question is material that was allegedly seized from the defendant. I, you know, we hope not to get this far, but we certainly are going to retrieve the rest of the file back from archives and see if it shows that this stuff was made available. But this court's Ploulot case shows that if the defendant is aware of evidence that was seized from him by a search warrant and has it available to him but doesn't go look at it, he can't later claim that the evidence was suppressed in violation of Brady. And if that's true, then there can't be any newly discovered evidence here. The information that's relied on in the letters that Mr. Balter allegedly wrote, right, those are his own letters. And if Mr. Balter is now asking for a new gloss on the Brady rule or to expand it, he's then using a collateral attack to create a new rule and that would then run into teak problems. So we think this is not newly discovered. It wasn't suppressed under Brady. But again, Mr. Balter admits in one of his pleadings, and we cited to it, that he doesn't even satisfy the 2255H1 standard. So if this is subject to that standard, then the claim has to be rejected. Does the court have any other questions for me? I do not. No. I have none. All right. Thank you. Thank you very much, Mr. Sanders. We'll hear from Mr. Graydon on rebuttal. Okay. So, your honors, may it please the court, I would like to address the issue of rightness in this case. And as Mr. Sanders pointed out, many courts have indeed held that a Brady violation is ripe at the time of trial. But there's an issue as to a question of fact, and ripeness necessarily to bring a claim will require that the defendant has the knowledge to be able to bring the claim. Thus, it doesn't necessarily come into fruition if the defendant has no knowledge of it. And again, the Brady rule places an affirmative duty on the prosecution to produce documents and Brady evidence that is favorable to the accused. So thus, in this case, the issue necessarily would be one of fact as to whether indeed these documents were actually available to Mr. Balter at the time that he made his first petition or not. And another thing that I'd like to bring up to this court would be that in Magwood v. Peterson, the court, considering Panetti, did understand that second and successive is indeed a term of art. And looking at Panetti, there are indeed circumstances where a second-in-time Brady claim, or not Brady claim, rather, a second-in-time claim of some variety because the Panetti holding did not constrict itself only to forward claims. It just didn't opine on them because those issues weren't before court. And so necessarily, that's why this court can indeed look to Panetti and look at the issue of ripeness in this case and determine whether a second-in-time 2255 claim alleging a Brady violation that was not known to the defendant is second or successive for purposes of AEDPA. Thank you. Thank you. Thank you very much, Mr. Graydon. We thank also the clinic and Attorney Rowe for weighing in as an amicus in this matter. We appreciate the service to this court. In that regard, we will take this matter under advisement. The matter is concluded. Thank you.